## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUKHJIT BAINS, | |
| Petitioner, | CIVIL ACTION NO. 3:21-cv-00353 |
| v. | (KANE, J.) |
| | (SAPORITO, M.J.) |
| HERMAN QUAY, Warden of Allenwood Low Security Federal Correctional Institution, | |
| Respondent. | |

## <u>REPORT AND RECOMMENDATION</u>

On February 26, 2021, the petitioner, appearing through counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) At the time of filing, Bains was incarcerated at FCI Allenwood Low, a federal prison located in Union County, Pennsylvania.

## I. BACKGROUND

Bains is a federal inmate serving a 63-month prison sentence for possession with intent to distribute methamphetamine and possession of a firearm and ammunition by a convicted felon. He is currently expected to complete his active prison term on May 26, 2022—a date which includes the application of 283 days of earned and projected good conduct time credit. His sentence also includes a three-year period of supervised

release, which will commence upon his release from active incarceration.

On December 21, 2018, the First Step Act ("FSA") of 2018 was signed into law. Among other provisions, the FSA sought to incentivize federal inmates to participate in programs that had been demonstrated to reduce recidivism. It directed the BOP to develop and implement a risk and needs assessment system to assess the recidivism risk and criminogenic needs of all federal prisoners, and to place prisoners in recidivism reducing programs and productive activities to address their needs and reduce this risk of recidivism. The FSA required the risk and needs assessment system to be developed by July 19, 2019—210 days after enactment. *See* 18 U.S.C. § 3632(a). It required the BOP to complete screening of all prisoners and to begin assigning them to programming by January 15, 2020—180 days after the deadline for developing the risk and needs assessment system. *See id.* § 3621(h)(1). The BOP was given a two-year period—ending January 15, 2022—to phase in the entire program for all prisoners. *See id.* § 3621(h)(2). During this phase-in period, the BOP was instructed to provide priority to inmates based on the proximity of their release dates. *See id.* § 3621(h)(3).

Under the FSA, the BOP is required to provide incentives to

prisoners who participate in and complete evidence-based recidivism reduction programs ("EBRR"),[1] including phone and visitation privileges, transfer to a prison closer to home, and other rewards. *See id.* § 3632(d). In addition, the FSA requires the BOP to provide time credits ("FSA time credits")[2] to eligible prisoners who successfully complete EBRR *or* productive activities ("PA").[3] *See id.* § 3632(d)(4). In relevant part, the

---

[1] The FSA defined "evidence-based recidivism reduction program" as activities that have been shown by empirical evidence to reduce recidivism or are based on research indicating that they are likely to be effective in reducing recidivism, and that are designed to help prisoners succeed in their communities upon release. *See* 18 U.S.C. § 3635(3). The BOP has identified several programs that meet these criteria, including the residential drug abuse program and federal prison industry program in which this petitioner participated.

[2] The statute simply uses the term "time credits." In their briefs, the parties have referred to these time credits as "earned time credits" or "special time credits." In its proposed rules to codify procedures regarding these time credits, the BOP has dubbed them "FSA time credits." *See* FSA Time Credits, 85 Fed. Reg. 75,268 (proposed Nov. 25, 2020) (to be codified at 28 C.F.R. pts. 523 and 541). For the sake of clarity, we have generally adopted this label, "FSA time credits," to distinguish them from other sorts of "time credits" awarded in the federal prison system. *See, e.g.*, 28 C.F.R. § 523.1 *et seq.* (addressing "good time credits" and "extra good time credits" awarded to prisoners sentenced for offenses committed before November 1, 1987); *id.* § 523.20 (addressing "good conduct time credits" awarded pursuant to 18 U.S.C. § 3624(b)).

[3] The FSA defined "productive activities" as "either a group or individual activity that is designed to allow prisoners determined as having a minimum or low risk of recidivating to remain productive and thereby maintain a minimum or low risk of recidivating." *See* 18 U.S.C.

*(continued on next page)*

statute provides that an eligible[4] prisoner:

> who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn [FSA] time credits as follows:
>
>> (i) A prisoner shall earn 10 days of [FSA] time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
>>
>> (ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk of recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of [FSA] time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

18 U.S.C. § 3632(d)(4)(A).

In his two most recent assessments, Bains was found to be FSA eligible, and he was assessed at a low risk of recidivating. Thus, he falls within the category of FSA-eligible prisoners who earn 15 days of FSA time credits for every 30 days of successful participation in EBRR or PA.

Ordinarily—that is, independent of any earned FSA time credits—

---

§ 3635(5). The BOP has identified several activities that meet these criteria, including several education courses in which this petitioner participated.

[4] The statute provides that prisoners serving sentences for various enumerated offenses are not eligible to receive FSA time credits under this statute. It is undisputed, however, that the petitioner is FSA eligible.

the BOP is authorized, in its discretion,[5] to assign a prisoner to serve the final months of his or her prison term, not to exceed twelve months, in "prerelease custody," where the prisoner is afforded re-entry programming to help him or her successfully transition back into the community. *See* 18 U.S.C. § 3624(c); 28 C.F.R. § 570.21. A prisoner may be designated to serve up to twelve months of prerelease custody in a residential re-entry center ("RRC")—also known commonly as a "halfway house." *See* 18 U.S.C. § 3624(c)(1); 28 C.F.R. § 570.21(a). Moreover, the prisoner may be designated to serve up to six months[6] of that prerelease custody in home confinement.[7] *See* 18 U.S.C. § 3624(c)(2); 28 C.F.R. § 570.21(b). Under this statutory and regulatory scheme, Bains was eligible for prerelease custody in an RRC as of May 26, 2020, and he is eligible for prerelease custody in home confinement as of November 26,

---

[5] *See Vasquez v. Strada*, 684 F.3d 431, 434 (3d Cir. 2012) (per curiam) (prerelease custody); *see also United States v. Jefferson*, No. 21-2020, 2021 WL 4279626, at *3 (3d Cir. Sept. 21, 2021) (per curiam) (home confinement).

[6] Home confinement is limited to the *shorter* of ten percent of the prisoner's term of imprisonment or six months. *See* 18 U.S.C. § 3624(c)(2); 28 C.F.R. § 570.21(b). Here, the petitioner was sentenced to serve a 63-month term of imprisonment, so the six-month limit applies.

[7] We note that "[t]his 6 months of home confinement is *not* additional to the 12 months of prerelease custody." *Guess v. Werlinger*, 421 Fed. App'x 215, 217 (3d Cir. 2011) (per curiam) (emphasis added).

2021.

The enactment of the FSA has overlaid an alternative basis for a prisoner to be designated to prerelease custody.[8] Under the FSA, a prisoner is entitled to immediate placement in prerelease custody (either in an RRC or in home confinement) when he has earned FSA time credits in an amount equal to the remainder of his imposed prison term, provided he or she has been found to pose a minimum or low recidivism risk in his or her last two assessments. *See* 18 U.S.C. § 3632(d)(4)(C) (providing that FSA time credits "*shall* be applied toward time in prerelease custody or supervised release") (emphasis added); *id.* § 3624(g)(2) (providing that a prisoner eligible for prerelease custody based on FSA time credits "*shall* be placed in prerelease custody") (emphasis added); *id.*

---

[8] We note that the BOP also appears to have the discretion to designate a prisoner to serve his term in an RRC setting at any time, though this would not constitute "prerelease custody," strictly speaking. *See* 18 U.S.C. § 3121(b) (granting the BOP unfettered discretion to designate the place of a prisoner's imprisonment, including placement in a community correctional facility); *Rodriguez v. Smith*, 541 F.3d 1180, 1183 (9th Cir. 2008) (noting that the BOP had recognized its discretion under § 3121(b) to transfer an inmate to an RRC at any time); *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 250 (3d Cir. 2005) (recognizing the BOP's discretionary authority to place a prisoner in an RRC at any time, including prior to the date when it is *required* to consider such placement by § 3624(c)).

§ 3624(g)(1)(D)(i)(I) (providing that a prisoner may be eligible for prerelease custody based on FSA time credits if he has been determined to be a minimum or low risk to recidivate in the last two reassessments).[9] Moreover, the time limits imposed by § 3624(c) do not apply to limit this non-discretionary period of prerelease custody based on FSA time credits. *See id.* § 3624(g)(10).[10] The parties have disputed calculation of the FSA time credits Bains has earned toward prerelease custody, but he is otherwise eligible for mandatory prerelease custody, either to an RRC or to home confinement, under these statutory provisions.

In addition, the FSA has provided an opportunity for a prisoner to obtain an early transfer to supervised release. Under the FSA, a prisoner is eligible to be released from confinement and to commence his or her term of supervised release up to twelve months early, at the discretion of the BOP, provided he or she has been found to pose a minimum or low

---

[9] The statute also permits prisoners who do not satisfy this requirement to petition the warden for discretionary approval. *See* 18 U.S.C. § 3624(g)(1)(D)(i)(II).

[10] So, in theory at least, a prisoner may accumulate sufficient FSA time credits to trigger mandatory prerelease custody to home confinement or an RRC before he or she would be eligible for such placement under § 3624(c)—six or twelve months prior to expiration of his or her active prison sentence, respectively.

recidivism risk in his or her last assessment. *See id.* § 3624(g)(3) (providing that the BOP "*may* transfer [an eligible prisoner sentenced to serve a term of supervised release after imprisonment] to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of [FSA] time credits") (emphasis added); *id.* § 3624(g)(1)(D)(ii) (providing that a prisoner may be eligible for early placement on supervised release based on FSA time credits if determined to be a minimum or low risk to recidivate in his or her last reassessment). As we have noted above, the parties have disputed calculation of the FSA time credits Bains has earned toward early supervised release, but he is otherwise eligible to be considered for early supervised release under these statutory provisions.

The parties dispute calculation of the petitioner's FSA time credits. Bains claims to have accrued more than 400 days of FSA time credits, which would have entitled him to an immediate transfer to prerelease custody in October 2020. The BOP, on the other hand, claims that Bains has accrued approximately 60 days of FSA time credits, and thus he is not eligible for prerelease custody under the FSA until March 2022.

## II.  DISCUSSION

Bains entered into BOP custody and began serving his active prison sentence on January 16, 2019, shortly after the FSA was enacted. While incarcerated, Bains was employed with UNICOR full-time for three separate periods: (1) March 7, 2019, through October 16, 2019, while at FCI Terre Haute; (2) November 9, 2019, through January 6, 2020, while at FCI Allenwood; and (3) November 9, 2020, through January 19, 2021, while at FCI Allenwood.[11] Bains participated in and successfully completed RDAP on October 20, 2020. Bains also completed several educational and vocational programs: ACE[12] Customer Service Class, completed on February 14, 2019; ACE Introduction to Carpentry, ACE Food Safety Class, ACE Health Is Everywhere, ACE Introduction to Spanish, ACE Journalism Class, ACE Marketing Class, ACE Nutrition & Science Research, ACE Resume & Cover Letter, and ACE Stonesoup:

---

[11] It is undisputed that Bains "successfully completed" these work assignments. His first assignment appears to have ended because he was transferred to a new facility. His second assignment ended because he was enrolled in RDAP. His third, post-RDAP assignment ended when all work programs were suspended due to COVID.

[12] "ACE" appears to mean "adult continuing education." *See generally* BOP Program Statement No. 5300.21, Education, Training and Leisure Time Standards, at 6 (Feb. 18, 2002).

Start a Business, all completed on February 28, 2019; ACE Basic Math: Decimals, ACE Electrical Trade, ACE The Plumbing Profession, and ACE Sociology Class, all completed on May 9, 2019; VT Computer Apps, completed on July 12, 2019; and RHU Our Solar System, RHU Email Basics, RHU Checkbook Math, and RHU ASVAB Career Exploration, all completed on April 6, 2021. Bains also completed a recreation program: Exercise Physiology, completed on November 18, 2019.[13] Finally, Bains completed three BOP-designated PAs: Money SMART for Older Adults, Women in the 21st Century Workplace, and AARP Foundation Finances 50+, all completed on November 13, 2020.

Under the FSA, the petitioner has earned some number of FSA time credits for successful completion of the foregoing programming, but the parties dispute the amount of FSA time credit the petitioner has earned. This dispute with respect to computation of the petitioner's FSA time credits boils down to two discrete issues. First, the parties disagree on when the FSA authorizes an inmate's programming to be considered for the purpose of accruing FSA time credits—the petitioner argues that all

---

[13] *See generally* BOP Program Statement 5370.11, Recreation Programs, Inmate, at 9 (June 25, 2008).

programming completed on or after the FSA's enactment on December 21, 2018, should be counted, while the respondent argues that only programming completed on or after January 15, 2020, should be counted. Second, the parties disagree on the amount of credit an inmate may earn for certain programming activities—the BOP has capped long-term and variable-hour activities such as its residential drug abuse program ("RDAP") and federal prison industries work (commonly known by its trade name, "UNICOR") at 500 hours each, while the petitioner argues that the opportunity to earn FSA time credits for such EBRR programming should not be capped.[14] The outcome on each of these issues

---

[14] Two other issues bear mentioning. First, the respondent references a proposed regulation providing that eligible inmates may only earn FSA time credits for EBRR or PA that are *assigned* to the inmate by BOP staff based on the inmate's risk and needs assessment. (*See* Doc. 18, at 11–12.) The petitioner disputes the applicability of this requirement, but he nonetheless contends that all of the programming at issue was either assigned or approved by BOP staff. The BOP has not responded to this particular contention, and based on our other legal conclusions, this point of dispute is moot. Second, the respondent suggests, in a margin note, that the petitioner's habeas claims are *unripe* because, based on the BOP's less generous calculation of FSA time credits, the petitioner is not eligible for prerelease custody or early transfer to supervised release until March 2022, at the earliest, and thus his petition is premature. (*See id.* at 15 n.4.) But it is well established that habeas corpus relief is not limited to *immediate* release from unlawful custody; the writ is available also to obtain a future release,
*(continued on next page)*

hinges on the preliminary issue of the level of deference this court should give to the BOP's interpretation of the FSA, as expressed in proposed regulations it has promulgated.

## A. Earliest Date When FSA Time Credits Could Be Earned

Based on the language of the FSA, the petitioner contends that he is entitled to FSA time credits for his successful completion of EBRR and PA programs after December 21, 2018—the date when the FSA was enacted. The BOP, on the other hand, has advanced a contrary position in proposed rules issued on November 25, 2020. *See* FSA Time Credits, 85 Fed. Reg. 75,268 (proposed Nov. 25, 2020) (to be codified at 28 C.F.R.

---

shortening the length of the petitioner's actual confinement in prison. *See Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973). "The function of the ripeness doctrine is to determine whether a party has brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003) (citation omitted). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. U.S.*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted). Here, however, the petitioner's claim for relief does not rest on some contingent future event, but on the BOP's treatment, for FSA time credit purposes, of EBRR and PA programs he has already completed in the *past*. Moreover, under the petitioner's construction of the FSA, he has already earned sufficient FSA time credits to mandate his *immediate* release from prison to the less-restrictive conditions of prerelease custody. Thus, his habeas claim is clearly ripe for adjudication.

pts. 523 and 541). Under one of these proposed rules, an inmate may only earn FSA time credits for programs completed on or after January 15, 2020. *Id.* at 75,272 (to be codified at 28 C.F.R. § 523.42(d)(1)). Thus, we must determine whether this particular interpretation of the statute by BOP is entitled to *Chevron* deference. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984); *see also Ramos-Sanchez v. Warden FCC Allenwood*, Civil No. 1:21-CV-00009, 2021 WL 3115204, at *2 (M.D. Pa. July 22, 2021) (applying *Chevron* deference to the very same BOP proposed rule involved here); *AARP v. Equal Emp't Opportunity Comm'n*, 390 F. Supp. 2d 437, 455–57 (E.D. Pa. 2005) (applying *Chevron* deference to proposed regulations); *Johnson v. Reserve Life Ins. Co.*, 765 F. Supp. 1478, 1480–83 (C.D. Cal. 1991) (applying *Chevron* deference to proposed regulation); *cf. United States v. Morton*, 467 U.S. 822, 835 & n.21 (1984) (affording deference to an agency's statutory interpretation where regulation was proposed *after* suit was brought); *Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1219 (11th Cir. 2009) (affording *Chevron* deference to regulation proposed *after* lawsuit began). *But see Lee v. Lynch*, 791 F.3d 1261, 1265 n.3 (10th Cir. 2015) (categorically declining to consider affording *Chevron*

deference to a proposed regulation that had never been adopted, with respect to proceedings that took place *seven years* after the rule had been proposed); *see also Thiam v. Holder*, 677 F.3d 299, 302 (6th Cir. 2012) (noting that the proposed regulation at issue in *Lee* was never finally promulgated).[15]

_____

[15] In his reply, the petitioner argues that, as proposed regulations, the BOP's FSA Time Credits rules are entitled to *no* deference, quoting a Supreme Court decision in which the Court commented that "a proposed regulation does not represent an agency's considered interpretation of its statute." (Doc. 21, at 8 (quoting *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 845 (1986)).) But the *Schor* decision is entirely inapposite to the present circumstances. In *Schor*, the respondent had argued that a federal agency's longstanding interpretation of a statute that it had been entrusted to administer, embodied in a final rule that had never been rescinded, was not entitled to *Chevron* deference because the agency had *at one time* considered a proposed regulation advancing an alternative interpretation of the statute. *See Schor*, 478 U.S. at 845. In response to public comment, the agency reconsidered the proposed rule and never adopted it. *See id.* The Supreme Court rejected the respondent's argument and afforded *Chevron* deference to the preexisting agency regulation. *See id.*; *see also Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 298 (3d Cir. 2014) (rejecting similar argument and affording *Chevron* deference to existing agency regulation interpreting statute, notwithstanding different interpretation in proposed regulation that was never adopted). The quoted language from the *Schor* decision says nothing whatsoever, either way, about whether an agency's proposed regulation interpreting a statute it has been entrusted to administer is entitled to *Chevron* deference. It stands only for the proposition that a proposed regulation that is ultimately not adopted does not *negate* the deference owed to an agency interpretation embodied in a previously adopted regulation that
*(continued on next page)*

- 14 -

In determining whether an agency interpretation is entitled to *Chevron* deference, a court must conduct a two-step analysis. *See Chevron*, 467 U.S. at 842. First, we must determine "whether Congress has directly spoken to the precise question at issue" in the language of

remains in effect. As other federal courts have recognized, "sometimes [even] informal agency actions are entitled to *Chevron* deference." *Tippins v. United States*, 154 Fed. Cl. 373, 383 (Fed. Cl. 2021); *see also Sinclair Wyoming Refining Co. v. U.S. Envtl. Prot. Agency*, 887 F.3d 986, 991 (10th Cir. 2017) (noting that *Chevron* deference is generally appropriate for agency interpretations produced by informal notice-and-comment rulemaking); *Krzalic v. Republic Title Co.*, 314 F.3d 875, 879 (7th Cir. 2002) ("[L]egislative rules and formal adjudications are always entitled to *Chevron* deference . . . ."); *Pennsylvania v. DeJoy*, 490 F. Supp. 3d 833, 879 n.41 (E.D. Pa. 2020) (noting that "some agency interpretations that do not have the force of law may at times still be entitled to *Chevron* deference"). Thus, although the notice-and-comment rulemaking process here has not yet reached its terminus with the adoption of a final rule, the BOP's proposed rules on FSA Time Credits fit within the category of interpretations that *may* be properly afforded *Chevron* deference.

The petitioner also cites a Second Circuit decision, *Sweet v. Sheahan*, 235 F.3d 80 (2d Cir. 2000), characterizing it as categorically refusing to apply *Chevron* deference to proposed regulations. (*See* Doc. 21, at 11–12.) But the *Sweet* court found the final regulations ultimately adopted were entitled to *Chevron* deference, including a provision in the final regulations setting a different and later effective date for disclosure obligations than had been stated in the proposed regulation that preceded notice-and-comment and promulgation of the final regulations. *See Sweet*, 235 F.3d at 85 & n.4. The *Sweet* court further discussed the law's strong presumption against retroactive application of regulations. *See id.* at 88–90. Nowhere did the *Sweet* court suggest that a proposed rule could *never* be afforded *Chevron* deference.

the statute. *Id.* "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. But "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. The court must defer to the agency's interpretation if it is a reasonable and permissive reading of the statute. *Id.* at 843–45.

The FSA provides that "[a] prisoner may not earn [FSA] time credits . . . for an evidence-based recidivism reduction program that the prisoner successfully completed . . . prior to the date of enactment of [the FSA]." 18 U.S.C. § 3632(d)(4)(B). The statute was enacted on December 21, 2018. The petitioner argues that the language of the statute therefore allows him to earn FSA time credits for any programs he completed after December 21, 2018—that is, *all* of the programming he has completed during his period of incarceration.

Although the statute unambiguously establishes that FSA time credits *may not* be earned prior to December 21, 2018, it is silent with respect to the effective date on which FSA time credits *may* be earned,

thus we find that Congress has *not* directly spoken to the precise question at issue.[16] *See Ramos-Sanchez*, 2021 WL 3115204, at *3; *see also Chevron*, 467 U.S. at 842. Therefore, because the statute is silent with respect to this precise question before the court, we must determine whether the BOP's attempt to fill this gap is reasonable and permissible in light of the statute's language. *See Ramos-Sanchez*, 2021 WL 3115204, at *3; *see also Chevron*, 467 U.S. at 843.

The BOP's proposed rule provides that an inmate may only earn FSA time credits for programs completed on or after January 15, 2020. FSA Time Credits, 85 Fed. Reg. at 75,272. As this court previously explained, prior to promulgation of the proposed rule:

[T]hese programs did not go into effect immediately. The

_____

[16] On this point, the petitioner has argued that the BOP's proposed rules are contrary to the unambiguous intent of the legislature in enacting the FSA, relying heavily on the statute's legislative history and on a letter from two U.S. senators to the Attorney General requesting revisions to the proposed rule and purportedly expressing the legislative intent behind the express language of the statute. But it is well established that such extrinsic evidence of legislative intent may not be considered at step one of the *Chevron* analysis. *See United States v. Geiser*, 527 F.3d 288, 294 (3d Cir. 2008). Rather, we must "determine whether Congress has unambiguously expressed its intent by looking at the plain and literal language of the statute." *Id.* (citations, brackets, and internal quotation marks omitted); *see also Szehinskyj v. Attorney Gen. of U.S.*, 432 F.3d 253, 256 (3d Cir. 2005) ("The law is what Congress enacts, not what its members say on the floor.").

> Attorney General was allowed 210 days after the First
> Step Act was enacted, on December 21, 2018, to develop
> and publish the Risk and Needs Assessment System,
> which the BOP was to use as a guide to implement the
> programs. The Attorney General published the Risk and
> Needs Assessment System on July 19, 2019. The BOP
> then had 180 days, or until January 15, 2020, to
> implement the system, complete inmate assessments,
> and then begin to assign prisoners to appropriate
> evidence-based recidivism reduction programs.

*Kurti v. White*, Civil No. 1:19-cv-2109, 2020 WL 2063871, at *4 (M.D. Pa. Apr. 29, 2020) (citations and footnote omitted). Thus, we concluded in *Kurti* that programming completed by an inmate prior to the January 15, 2020, implementation of the FSA is not eligible for FSA time credit. *See id.* at *5. Based on this same reasoning, we later considered the proposed rule at issue and found it to be a reasonable and permissible reading of the statute, which is therefore entitled to *Chevron* deference. *See Ramos-Sanchez*, 2021 WL 3115204, at *3; *accord Delahoz v. Spaulding*, No. 1:21-cv-01204, 2021 WL 384350, at *4 (M.D. Pa. Aug. 31, 2021) ("[I]nmates cannot earn [FSA] time credits for EBRRs and PAs completed before January 15, 2020."); *Rehfuss v. Spaulding*, No. 1:21-cv-00677, 2021 WL 2660869, at *4 (M.D. Pa. June 29, 2021) (same).

Accordingly, the petitioner may only earn FSA time credits based on EBRR or PA programming completed on or after January 15, 2020.

Much of the programming Bains relies on here was completed before this date, and thus it is not eligible for FSA time credit. What remains, then, are: (1) the petitioner's most recent stint of UNICOR employment from November 9, 2020, through January 19, 2021; (2) his completion of the RDAP program on October 20, 2020; (3) his completion of three PA programs[17] on November 13, 2020; and (4) his completion of four independent-study RHU educational programs[18] on April 6, 2021.

## B. UNICOR Work Assignment

UNICOR work assignment is one of the numerous BOP-approved EBRR programs made available to FSA-eligible inmates. (*See* Doc. 1-5, at 3; Doc. 18-2, at 28; Doc. 34-2, at 54.)[19] The petitioner's risk and needs

---

[17] Money SMART for Older Adults, Women in the 21st Century Workplace, and AARP Foundation Finances 50+.

[18] RHU Our Solar System, RHU Email Basics, RHU Checkbook Math, and RHU ASVAB Career Exploration.

[19] As the BOP has progressed in its implementation of the FSA, it has promulgated successive iterations of a guide listing approved EBRR and PA programs. Together with his petition, the petitioner submitted a copy of what appears to be an undated, early version of this guide, titled "Evidence-based Recidivism Reduction (EBRR) Programs and Productive Activities (PA)." (Doc. 1-5.) In support of his response to the petition, the respondent submitted a copy of a February 2021 version of the guide, titled "First Step Act: Approved Programs Guide." (Doc. 18-2, at 15–60.) In response to our recent order expanding the record (Doc. 32), the respondent submitted a copy of a July 2021 version of the guide, titled "First Step Act: Approved Programs Guide." (Doc. 34-2, at 39–87.)

assessment includes a criminogenic need of Work. (Doc. 34-2, at 37.)

Bains completed a full-time work assignment with UNICOR, which began on November 9, 2020, and ended on January 19, 2021, at which time all prison work programs were suspended due to the COVID-19 pandemic. (Doc. 33, at 2.) During this period of ten weeks and two days, Bains worked eight hours per day, five days per week. There is no evidence in the record before us, nor any representation by counsel, to suggest that Bains missed any of his regularly scheduled workdays or worked any additional overtime days during this period. Based on this information, the petitioner performed no more than 416 hours of work for UNICOR after January 15, 2020, and thus the 500-hour "cap" is not at issue with respect to this EBRR program activity. Nevertheless, the parties do not dispute that Bains "successfully completed" his work assignment, which was cut short only due to restrictions imposed as a result of the COVID-19 pandemic. Accordingly, we find that the petitioner has accrued 500 hours of EBRR program credit based on his UNICOR work assignment, equivalent to 62½ days.[20]

---

[20] The FSA itself describes the computation of FSA time credits in terms of days rather than the hours in which the BOP has measured *(continued on next page)*

## C. RDAP Completion

RDAP is one of the numerous BOP-approved EBRR programs made available to FSA-eligible inmates. (*See* Doc. 1-5, at 3; Doc. 18-2, at 38; Doc. 34-2, at 64.) The petitioner's risk and needs assessment includes a criminogenic need of Substance Abuse. (Doc. 34-2, at 37.)

Bains participated in and successfully completed the RDAP program between January 7, 2020, and October 20, 2020. (Doc. 1 ¶ 18.)[21] The parties dispute the calculation of the amount of EBRR programming

---

EBRR and PA programming. The BOP's proposed rules expressly provide that: "For purposes of earning FSA Time Credits, a 'day' is defined as one eight-hour period of participation in an Evidence-Based Recidivism Reduction program or Productive Activity that an eligible inmate successfully completes." FSA Time Credits, 85 Fed. Reg. at 75,272 (to be codified at 28 C.F.R. § 523.42(b)). The respondent advances this same interpretation of the statute in this case. The petitioner has expressly declined to contest the respondent's argument on this point. (Doc. 21, at 15 n.5.) Because the petitioner has expressly conceded the point, we may adopt the respondent's construction of the statute with respect to the definition of "day" for FSA time credit computation purposes as our own. But we also note our agreement with the reasoning of our sister court in *Hare v. Ortiz*, Civ. No. 20-14093 (RMB), 2021 WL 391280 (D.N.J. Feb. 4, 2021), which reached the same conclusion in a contested matter. *See id.* at *11–*12 (affording *Chevron* deference to the BOP interpretation of the term "day" as used in the FSA).

[21] We note that BOP records indicate that Bains began his participation in RDAP on December 20, 2019, nineteen days earlier than the petition alleges. (*See* Doc. 34-2, at 33.) In light of our conclusion below with respect to the 500-hour cap on EBRR credit, however, the date when Bains began his participation in RDAP is immaterial.

time with which he is credited for this program. The petitioner contends that, as a residential program, the petitioner should be credited with 288 days of EBRR program participation, reflecting the entire period of his participation as measured in *calendar days*. The respondent, however, contends that completion of RDAP results in an award of only 500 hours of EBRR program credit.

The FSA expressly delegated authority to the BOP to determine "the type, amount, and intensity of [EBRR] programming and [PA] that shall be assigned for each prisoner." *See* 18 U.S.C. § 3632(b). It further provided that EBRR programming "*may* include . . . substance abuse treatment." *Id.* § 3635(3)(C)(vii) (emphasis added). In compiling its list of approved EBRR programming, the BOP has included RDAP as an approved EBRR program for which it will award 500 hours of EBRR programming hours upon completion. (*See* Doc. 1-5, at 3; Doc. 18-2, at 38; Doc. 34-2, at 64.) Although the RDAP program may be conducted over a period of nine to twelve calendar months, BOP policies provide that the standard RDAP treatment program "consists of a minimum of 500 *contact* hours; i.e., face to face contact between treatment staff and inmate participants, over no less than 9 months of half-day

programming," which occurs daily, excluding weekends and holidays. BOP Program Statement No. 5330.11, *Psychology Treatment Programs*, sec. 2.5.10 (Mar. 16, 2009).[22]

Here, the BOP's FSA-approved programs guide and its psychology treatment program statement are not published rules or regulations entitled to *Chevron* deference, but only interpretive rules that do not require notice and comment. Nevertheless, they are entitled to "some deference" so long as each sets forth a permissible construction of the statutes the BOP is charged with administering. *See Reno v. Koray*, 515 U.S. 50, 60–61 (1995); *Blood v. Bledsoe*, 648 F.3d 203, 208 (3d Cir. 2011). In light of the BOP's standard requirement that an RDAP program consists of 500 hours of face-to-face treatment programming, we find its concomitant determination that successful completion of RDAP should result in an award of 500 hours of EBRR program credit to be a reasonable and permissible construction of the FSA.

Based on the foregoing, the petitioner has accrued 500 hours of

---

[22] The court may properly take judicial notice of a BOP program statement. *United States v. Tidzump*, 841 F.3d 844, 845 & n.1 (10th Cir. 2016); *Davila v. Gladden*, 777 F.3d 1198, 1207 n.3 (11th Cir. 2015); *United States v. Thornton*, 511 F.3d 1221, 1229 n.5 (9th Cir. 2008); *Antonelli v. Ralston*, 609 F.2d 340, 341 n.1 (8th Cir. 1979).

EBRR program credit based on his successful completion of RDAP, equivalent to 62½ days.[23]

### D. Productive Activities

Bains has completed three of the BOP-approved PA programs: Money SMART for Older Adults, Women in the 21st Century Workplace, and AARP Foundation Finances 50+. (*See* Doc. 1-5, at 5, 6, 7; Doc. 18-2, at 47, 53, 56; Doc. 34-2, at 74, 80, 83.) The petitioner's risk and needs assessment includes criminogenic needs of Finance/Poverty and Work.[24] (Doc. 34-2, at 37.)

The BOP's FSA-approved programs guide provides that successful completion of the AARP Foundation Finances 50+ program results in an award of 5 hours of PA program credit, successful completion of the Money SMART for Older Adults program results in an award of 28 hours of PA program credit, and successful completion of the Women in the 21st Century Workplace program results in an award of 10 hours of PA program credit. The BOP appears to have based its determinations with

---

[23] *See supra* note 20.

[24] We note that a criminogenic need of Finance/Poverty was removed by an update to the petitioner's risk and needs assessment on May 28, 2021. At the time when he completed these PAs, however, Bains had an active Finance/Poverty need on his record.

respect to the number of hours to award for PA program credit purposes on the amount of actual instruction time provided by each of these FSA-accredited programs. For the same reasons given with respect to the BOP's determination that successful completion RDAP should result in an award of 500 hours of EBRR program credit, we find its determination with respect to PA program credit awarded for successful completion of each of these three PA programs to be a reasonable and permissible construction of the FSA.

Based on the foregoing, the petitioner has accrued 43 hours of PA program credit based on his successful completion of Money SMART for Older Adults, Women in the 21st Century Workplace, and AARP Foundation Finances 50+, equivalent to 5⅜ days.[25]

### E. Independent-Study Coursework

Bains has also recently completed four independent-study courses: RHU Our Solar System; RHU Email Basics; RHU Checkbook Math; and RHU ASVAB Career Exploration.[26] (Doc. 34-2, at 31, 38.) While each of these self-study courses was affirmatively assigned to the petitioner by

---

[25] *See supra* note 20.

[26] Each program appears to involve the completion of a 3-hour course of self-guided instruction. (*See* Doc. 34-2, at 38.)

BOP staff (*see id.* at 27), none is among the EBRR or PA programs listed in the BOP's FSA-approved programs guide. (*See* Doc. 1-5; Doc. 18-2, at 15–60; Doc. 34-2, at 39–87.) Thus, Bains has accrued no EBRR or PA program credit based on his completion of these educational courses that are not approved for FSA time credit purposes. *See Rominger v. Spaulding*, No. 1:21-cv-00943, 2021 WL 2894760, at *4 (M.D. Pa. July 9, 2021) ("[FSA time] credits are earned only when an inmate successfully completes one of the BOP-approved EBRR programs or PAs related to one of the particular needs assigned to that inmate.") (internal quotation marks omitted), *appeal filed*, No. 21-2527 (3d Cir. Aug. 17, 2021); *Rehfuss*, 2021 WL 2660869, at *5 ("[O]nly those EBRRs and PAs described in the *First Step Approved Programs Guide* qualify for [FSA] Time Credits under the FSA[.]"); *see also Delahoz*, 2021 WL 3884350, at *4 ("If an inmate could accrue FSA [time] credits by participating in any type of recidivism-reduction program or activity, the statutory language instructing the BOP to establish and implement an individualized risk and needs assessment system, 18 U.S.C. § 3632(a), (b), would be

superfluous."); *Rehfuss*, 2021 WL 2660869, at *5 (same).[27]

Based on the foregoing, the petitioner has accrued no EBRR or PA program credit based on his completion of RHU Our Solar System, RHU Email Basics, RHU Checkbook Math, and RHU ASVAB Career Exploration.

### F. Computation of FSA Time Credits

Altogether, Bains has earned a total of 1,043 hours of EBRR and PA program credit. Converted into 8-hour "days" of participation,[28] this amounts to 130⅜ days of EBRR/PA participation. As a low-risk inmate, Bains is entitled to 15 days of FSA time credits for every 30 days of successful EBRR or PA participation. *See* 18 U.S.C. § 3632(d)(4)(A). The FSA does not provide for partial FSA time credit awards. *See Rehfuss*, 2021 WL 2660869, at *5.

Accordingly, Bains has at this time accrued sufficient hours of successful EBRR/PA participation to earn four 15-day awards of FSA time credits, for a total of 60 days of FSA time credits. Thus, under the

---

[27] Moreover, we note that even if Bains were credited with the 12 hours of instructional time implicated by these four independent-study courses, it would be insufficient to reach the next 30-day threshold necessary for him to earn an additional 15-day period of FSA time credits.

[28] *See supra* note 20.

FSA, Bains is entitled to immediate, mandatory placement in prerelease custody no earlier than March 27, 2022.[29] *See* 18 U.S.C. § 3632(d)(4)(C); *id.* § 3624(g)(2) *id.* § 3624(g)(1)(D)(i)(I). This has been the respondent's position from the outset.

## III.  RECOMMENDATION

For the foregoing reasons, it is recommended that the petition for a writ of habeas corpus be **DENIED without prejudice** to any future petition should the petitioner remain incarcerated as the date of his entitlement to non-discretionary prerelease custody approaches.

Dated: October 27, 2021                           ***s/Joseph F. Saporito, Jr.***
                                                  JOSEPH F. SAPORITO, JR.
                                                  United States Magistrate Judge

---

[29] As discussed *supra*, we note that, in the alternative, the FSA authorizes the BOP, in its discretion, to grant Bains an early transfer to supervised release on that same date, March 27, 2022. Of course, the BOP also retains discretion under the auspices of § 3624(c) to transfer Bains to prerelease custody in an RRC at an earlier date, or to prerelease custody in home confinement as early as November 26, 2021. We note that, although the respondent has been entirely noncommittal with respect to such a discretionary transfer to prerelease custody, the petitioner's records suggest an anticipated transfer to prerelease custody in an RRC in early December 2021, which would moot this petition.

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

SUKHJIT BAINS,

      Petitioner,

      v.

HERMAN QUAY, Warden of
Allenwood Low Security Federal
Correctional Institution,

      Respondent.

CIVIL ACTION NO. 3:21-cv-00353

(KANE, J.)
(SAPORITO, M.J.)

## <u>NOTICE</u>

NOTICE IS HEREBY GIVEN that the undersigned has entered the
foregoing Report and Recommendation dated October 27, 2021. Any
party may obtain a review of the Report and Recommendation pursuant
to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed
> findings, recommendations or report addressing a
> motion or matter described in 28 U.S.C. § 636(b)(1)(B)
> or making a recommendation for the disposition of a
> prisoner case or a habeas corpus petition within
> fourteen (14) days after being served with a copy thereof.
> Such party shall file with the clerk of court, and serve
> on the magistrate judge and all parties, written
> objections which shall specifically identify the portions
> of the proposed findings, recommendations or report to
> which objection is made and the basis for such
> objections. The briefing requirements set forth in Local
> Rule 72.2 shall apply. A judge shall make a de novo

determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Dated: October 27, 2021           ***s/Joseph F. Saporito, Jr***.
                                  JOSEPH F. SAPORITO, JR.
                                  United States Magistrate Judge